UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

SUDHIR A. SHAH,
    Plaintiff,

v.      No. 3:05CV00306(PCD)

JAMES P. PURCELL ASSOCIATES, INC.,
    d/b/a PURCELL ASSOCIATES, INC.,
    Defendant.

### MEMORANDUM OF DECISION RE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Sudhir A. Shah brings this employment discrimination action, alleging that he was terminated on the basis of age and national origin in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq., Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., 42 U.S.C. § 1981, and the Connecticut Fair Employment Practices Act ("CFEPA"), CONN. GEN. STAT. §§ 46a-58 et seq. Defendant James P. Purcell Associate, Inc., d/b/a Purcell Associates, Inc. ("Purcell") moves for summary judgment pursuant to Fed. R. Civ. P. 56. For the reasons explained below, Defendant's Motion for Summary Judgment [Doc. No. 84] is **denied.**

**I.**     **BACKGROUND**

Plaintiff Shah is a native of India who was naturalized as an American citizen. Defendant Purcell is a consulting engineering firm that provides services to government and private sector clients in the areas of site design, traffic engineering, bridges, roads, and buildings. Shah was employed by Purcell for 36 years, first as a civil engineer, then as project manager, and finally as head of the Structures Division, until his termination in 2002. At the time of his termination, Shah was 60 years old.

In the late 1970s, Plaintiff was promoted to division head of the Structures Division. Division heads are responsible for the financial and technical performance of their divisions. They act as project managers, supervise the other project managers in their divisions, and have primary responsibility for pricing prospective jobs and preparing competitive bids. According to

Defendant, division heads have substantial autonomy and responsibility in managing finances and personnel in their divisions, thereby generating most of Purcell's work and providing for a substantial amount of Purcell's profitability fairly independently. Shah, however, represents that he received more input from senior management such as Christopher M. Cignoli, Purcell's business development person, or Wally Ivers, its president.

According to Defendant, Plaintiff Shah's financial performance in 2002, the year in which he was terminated, was the culmination of a trend of poor financial performance for which he was repeatedly warned. In February, 1997, Ivers gave Shah a record of his profit-loss performance for his division which showed that the division had revenue below the breakeven point in three of the previous five years. (Def.'s Mot. for Summ. J. App. at A-14a.) In May 2000, Ivers gave Shah his annual performance review and warned him that, although Shah had indicated an intention to retire in 2004, Ivers would replace him before then if his division fell below the "minimum passing grade" again. (Id. at A-19, ¶ 2.) (Since 1996 or thereabouts, Ivers established a firm policy that attaining 70% of the annual profit goal set by the division head, both on the division level and as a project manager, was the "minimum passing grade" for purposes of employee performance reviews.) Defendant asserts that in 2002, the year in which Shah was terminated, the projects he managed yielded the worst result of any project manager from 1994 through 2002. (Id. at A-21 - A-24.) In the last nine years of his employment, Shah therefore had two of the three worst years of any project manager. Plaintiff Shah, however, disputes Purcell's representation of his financial performance and presents an alternative analysis of the financial data that shows that the Structures Division was the second-best performing division from 1994 until June 2002. (Pl.'s Opp. to Def.'s Mot. for Summ. J. at 14-15; Pl.'s Local Rule 56(a)(2) ¶¶ 29-36, 41-47.)

As part of Purcell's management succession planning process, in 2000 Ivers, with the assistance of Shah and Cignoli, began to groom Rohit Pradhan to succeed Shah as division head of the Structures Division. Pradhan, who is also of Indian descent, was 42 at the time. Shah

agreed that Pradhan would be a suitable replacement for him when he retired in early 2004. (Shah Dep. at 31.) In December, 2002, Ivers decided to accelerate the planned replacement of Shaw by Pradhan and terminate Shah for poor performance. (Ivers. Dep. ¶¶ 57, 62.)

Starting five to ten years ago and possibly ending about a year before Shah's termination, Ivers made comments about not liking older employees and wanting younger employees to go to client meetings and make client presentations. (Shah Dep. at 26; Shah Aff. ¶¶ 12, 13.) Cignoli made remarks to Ivers that clients were concerned by presentations made by older consultants. (Cignoli Dep. at 48.) In 2000, Purcell instituted a marketing initiative called the Make-A-Friend program, through which senior staff identified clients with the most potential to give Purcell future work. The emphasis of the program was for those in the number two management position in each Purcell division to develop social contacts with the principals of the clients and with their peers in the client organizations to deepen Purcell's client relationships and ultimately develop more work with them. (Cignoli Dep. at 31-32; Ivers Dep. at 134, 208; Def.'s App. at A-48 § 2.) At various times, Ivers stated that he wanted "up-and-comers" involved with the Make-A-Friend program. According to Cignoli, one purpose of the program was to give prospective clients and impression of Purcell's being a younger firm. (Cignoli Dep. at 46.) Ivers now attests that he did not see this as a goal of the program and does not remember this issue being discussed with reference to the program. (Ivers Aff. ¶ 17.) Plaintiff Shah was assigned duties in connection with this program, and Pradhan, as the number two position in the division, was assigned to represent the Structures Division in the program.

Starting in the late 1980s, Ivers criticized the presentation skills of foreign nationals who worked at Purcell. Ivers also made comments about his not wanting Purcell to be the United Nations. As Shah attests, Ivers made these statements in staff meetings, general comments related to the reviews of the personnel and their work, about ten times each year from the late 1980s to within a year of Shah's termination. (Shah. Dep. at 9-15.)

In February, 2005, Plaintiff Shah filed this action, alleging Purcell's violation of his rights

under the ADEA, Title VII, § 1981, and the CFEPA. Now pending is Purcell's motion for summary judgment [Doc. No. 84] on all four counts of Plaintiff's complaint..

## II. STANDARD OF REVIEW

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). No genuine issue of material fact exists and summary judgment is therefore appropriate when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A material fact is one which "might affect the outcome of the suit under the governing law," and an issue is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Importantly, however, "[c]onclusory allegations will not suffice to create a genuine issue." Delaware & H.R. Co. v.Conrail, 902 F.2d 174, 178 (2d Cir. 1990).

The moving party bears the burden of establishing that summary judgment is appropriate. Anderson, 477 U.S. at 225. "A defendant need not prove a negative when it moves for summary judgment on an issue that the plaintiff must prove at trial. It need only point to an absence of proof on the plaintiff's part, and, at that point, plaintiff must 'designate specific facts showing that there is a genuine issue for trial.'" Parker v. Sony Pictures Entm't, Inc., 260 F.3d 100, 111 (2d Cir. 2001) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986)); see also Gallo v. Prudential Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1223-24 (2d Cir. 1994) ("The moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case."). Where, as here, the non-moving party "'chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial.'" Vt. Teddy

Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004) (quoting Amaker v. Foley, 274 F.3d 677, 681 (2d Cir. 2001)); see also D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006); Sloane v. Getz, 150 Fed. Appx. 86, 88 (2d Cir. 2005). Even unopposed motions for summary judgment must "fail where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law." D.H. Blair, 462 F.3d at 110 (quoting Champion v. Artuz, 76 F.3d 483, 486 (2d Cir. 1996)) (internal quotation marks omitted).

## III.  DISCUSSION

Shah's age and national origin discrimination claims are analyzed under the three-step burden shifting framework established by McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981), and St. Mary's Honor Center v. Hicks, 509 U.S. 502, 519, 524 (1993). See, e.g., James v. N.Y. Racing Ass'n, 233 F.3d 149, 153 (2000) (applying McDonnell Douglas to ADEA claims); Woodman v. WWOR-TV, Inc., 41 F.3d 69, 76 (2d Cir. 2006) (same for Title VII); Lopez v. S.B. Thomas, Inc., 831 F.2d 1184, 1188 (2d Cir. 1987) (same for § 1981); Craine v. Trinity Coll., 259 Conn. 625, 636-37 (2002) (same for Connecticut state law discrimination claims). A plaintiff has the initial burden of establishing a prima facie case of discrimination by showing that, "(i) at the relevant time the plaintiff was a member of the protected class; (ii) the plaintiff was qualified for the job; (iii) the plaintiff suffered an adverse employment action; and (iv) the adverse employment action occurred under circumstances giving rise to an inference of discrimination[.]" Woodman, 411 F.3d at 76. A plaintiff's establishment of a prima facie case gives rise to a presumption of unlawful discrimination, id. at 76, and the burden of production shifts to the defendant. If the defendant then proffers a "legitimate, nondiscriminatory reason" for the challenged employment action, Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 91 (2d Cir. 2001), "the presumption of discrimination drops out," Roge v. NYP Holdings, Inc., 257 F.3d 164, 168 (2d Cir. 2001), and the plaintiff must prove that the legitimate reasons offered by the defendant were "not its true reasons but were a pretext for discrimination." Id. (quoting Reeves v. Sanderson

Plumbing Prods., Inc., 530 U.S. 133 (2000)). At all times, the ultimate burden of persuasion remains with the plaintiff to show that the defendant intentionally discriminated against the plaintiff. Hicks, 509 U.S. at 507 (quoting Burdine, 450 U.S. at 256).

### A. Age Discrimination Claim under the ADEA and the CFEPA

In connection with Shah's age discrimination claims under the ADEA and the CFEPA, Defendant does not dispute that Shah has established a prima facie case. According to Defendant Purcell, its reasons for terminating Shah are legitimate, nondiscriminatory reasons pertaining to the financial well-being of the company. In support of its summary judgment motion, Defendant has tendered an extensive analysis of the performance of the Structures Division under Plaintiff's supervision and management, and it has shown that the division has not measured up financially to what management regards as a minimally acceptable contribution to the overall profitability of the company. According to Defendant, Plaintiff had the worst record of meeting his division's profit goals in the thirteen years prior to his termination. As a project manager for the eight years prior to his termination, Plaintiff had two of the three worst losses of anyone in the company, greater total losses over that period than any other project manager, and the lowest net profits over the time period. If credited, Defendant's financial data would justify a finding that over a number of years, Plaintiff's division was sufficiently deficient as to justify management's change of the person in charge.

In response to Defendant's motion, Plaintiff first argues that the McDonnell Douglas burden-shifting framework does not apply to his age discrimination claim. "[T]he McDonnell Douglas test is inapplicable where the plaintiff presents direct evidence of discrimination." Trans World Airlines, Inc. v. Thurston et al., 469 U.S. 111, 121 (1985) (citing Teamsters v. United States, 431 U.S. 324, 358, n. 44 (1977)). If a plaintiff provides direct evidence, the factfinder must determine whether the evidence shows that the impermissible criterion played a motivating or substantial part in the hiring decision. Grant v. Hazelett Strip-Casting Corp., 880 F.2d 1564, 1569 (2d Cir. 1989). However, the direct evidence analysis is only triggered by

"conduct or statements by persons involved in the decision making process that may be viewed as directly reflecting the alleged discriminatory attitude," Lightfoot v. Union Carbide Corp., 110 F.3d 898, 913 (2d Cir. 1997) (quoting Ostrowski v. Atl. Mut. Ins. Cos., 968 F.2d 171, 182 (2d Cir. 1992)). To warrant application of this mixed-motive burden shift instead of the McDonnell Douglas test, "the plaintiff must be able to produce a "smoking gun" or at least a "thick cloud of smoke" to support his allegations of discriminatory treatment.'" Stone v. Bd. of Educ. of Saranac Cent. Sch. Dist., 153 Fed. Appx. 44, 46 (2d Cir. 2005) (quoting Raskin v. Wyatt Co., 125 F.3d 55, 61 (2d Cir. 1997).

Citing the Make-A-Friend program and several age-related comments by Ivers and Cignoli as "direct evidence" of age discrimination, Plaintiff has not proffered a "smoking gun" to support his allegation that triggers the direct evidence burden shifting framework. None of the evidence that Plaintiff describes as "direct" actually bears directly on the employment decision at issue. Plaintiff has not shown that Ivers used the phrase "up-and-comers" with reference to Plaintiff's termination, or that the Make-A-Friend program had anything to do with Plaintiff's poor financial performance or Ivers's decision to terminate him. The joint decision by Shah, Ivers, and Cignoli that Shah would give Pradhan more exposure to clients is not direct evidence that Ivers considered Shah's age when deciding to terminate him. (Shah Dep. at 30, 50; Pradhan Dep. at 20.) Replacement by younger workers, while potentially circumstantial evidence from which discriminatory motive may be inferred, also does not constitute direct evidence of discriminatory intent. For these reasons, there is insufficient direct evidence to trigger the mixed motive analysis, and Plaintiff's age discrimination claims, as well as his national origin discrimination claims, are subject to the McDonnell Douglas framework of analysis.

To overcome the legitimate business reason for Plaintiff's termination proffered by Defendant in its motion, Plaintiff puts a different slant on the financial data presented by Defendant for the years in question, not to question the correctness or accuracy of the data but to demonstrate a question of fact as to the implications to be drawn therefrom. Plaintiff also

attempts to establish pretext by showing that younger employees with worse financial results than his were retained. To establish pretext by showing how comparable employees were treated, "the comparable employees must be similarly situated 'in all material respects,' which means that 'a plaintiff must show that her co-employees were subject to the same performance evaluation and discipline standards ... [and] that similarly situated employees who went undisciplined engaged in comparable conduct.'" Atterberry v. Ikon Office Solutions, Inc., No. Civ. 302CV1490 (PCD), 2003 WL 22937719, at * 4 (D. Conn. Dec. 10, 2003) (quoting Graham v. Long Island R.R., 230 F.3d 34, 40 (2d Cir. 2000)). Plaintiff has not shown that the allegedly younger division heads engaged in legitimately comparable conduct which necessitates a finding that Plaintiff was singled out. However, he does raise sufficient questions about Defendant's financial data to establish a genuine issue of material fact that should be left to a jury to decide. Although Defendant shows ample financial evidence that demonstrates Plaintiff's poor performance as division head, Plaintiff offers alternative perspectives of his division's profitability which may convince a jury that his termination was unfounded. Plaintiff also suggests that Defendant misrepresents its performance evaluations for purposes of this motion, focusing on Shah's year-by-year performance in contradiction to Purcell's usual method of evaluating employee's performances over the course of five-year periods.

      Plaintiff also raises a sufficient question of pretext to defeat Defendant's summary judgment motion by presenting evidence of Ivers's and Cignoli's disparaging age-related comments and the discriminatory aspects of the Make-A-Friend program. Comments showing discriminatory animus made by the decision-maker or by someone whose input played a material role in the employment decision may raise an inference of pretext, Vancour v. Bozzutto's, Inc., Civ. No. 03CV2088 (JBA), 2006 WL 758636, at *7 (D. Conn. March 24, 2006), although "[a]n inference of discrimination requires discriminatory remarks to be relatively contemporaneous to the adverse employment action and related to the employment decision in question." Saeed v. Warner-Lambert Co., No. Civ.3:00CV197(PCD), 2002 WL 32500925, *3 (D. Conn. May 10,

2002) (citing Rush v. McDonald's Corp., 966 F.2d 1104, 1116 (7th Cir. 1992)); see also Saeed v. Warner-Lambert Co., 61 Fed. Appx. 740, 742 (2d Cir. 2003) (citing O'Connor v. Viacom Inc./Viacom Int'l Inc., No. 93 CIV. 2399 (LMM), 1996 WL 194299, at *5 (S.D.N.Y. Apr. 23, 1996) ("stray remarks in the workplace ... without a demonstrated nexus to the complained of personnel actions, will not defeat the employer's motion for summary judgment")). Here, the alleged age-related comments made by Ivers and Cignoli are fairly remote from Shah's termination and do not appear to bear directly on the decision to terminate him. However, the Make-A-Friend program may reflect a company policy impermissibly involving age bias, and a jury may find that Ivers's comments about "up-and-comers" suggests a discriminatory animus perpetuated through the Make-A-Friend program. Taken together with the questions of fact surrounding Defendant's financial data, and read in the light most favorable to the non-moving party, the evidence presented does not entitle Defendant to judgment as a matter of law on Plaintiff's age discrimination claim. Thus, on the basis of a claim of pretext and age discrimination, Defendant's motion for summary judgment on Plaintiff's age discrimination claim is denied.

**B.     National Origin Discrimination under Title VII, § 1981, and CFEPA**

Defendant moves for summary judgment on Plaintiff's claim of discrimination based on his national origin on the ground that Plaintiff cannot establish a prima facie case. Purcell concedes for purposes of this motion that Plaintiff has satisfied the first three elements of his prima facie case: that, as an American of Indian origin, Shah belongs to a protected group; that he was qualified for his position; and that he was discharged. (Def.'s Mot. for Summ. J. at 31.) Purcell contends, however, that Plaintiff cannot show that the discharge occurred under circumstances giving rise to an inference that he was discriminated against on the basis of his national origin. Carlton v. Mystic Transp. Inc., 202 F. 3d 129, 134 (2d Cir. 2000).

Defendant argues that Plaintiff cannot establish an inference of discrimination on the basis of national origin because he was replaced by Rohit Pradhan, who also is of Indian origin.

(See Pradhan Dep. at 11.). The fact that the same person who terminated Plaintiff also took actions that benefitted members of Plaintiff's ethnic group may undermine the claim that the decision maker harbors animus against Plaintiff based on his ethnicity. Raheim v. New York City Bd. of Educ., Nos. 95-CV-4599 (JFB)(CLP), 97-CV-3687 (JFB)(CLP), 2006 WL 2385428, *10 (E.D.N.Y. Aug. 17, 2006) (citing Grady v. Affiliated Cent. Inc., 130 F.3d 553, 560 (2d Cir. 1997); see also Figueroa v. New York Health and Hosps. Corp., No. 03 Civ. 9589(NRB), 2007 WL 943537, at *8 (S.D.N.Y. March 27, 2007). It is undisputed that Ivers made the decision both to terminate Shah and to replace him with Pradhan. Ivers also had played a role in promoting Shah to division head in the first place, and he has also hired and promoted at least two other Indian men. (See Ivers Aff. ¶¶ 4, 11, 13; Pradhan Dep. at 54.) These facts do tend to undercut Plaintiff's claim of discrimination based on national origin.

However, as Plaintiff argues in response to Defendant's motion, the material issue is not whether Shah was replaced by someone of Indian origin but whether he was treated differently than others of different ethnicity. Plaintiff shows that his performance was consistently and dramatically better than that of Soares, the head of the Civil Division who is Caucasian, and he argues that this differential treatment raises an inference of discrimination. Soares was scheduled to retire in 2004, the same year as was Shah (See Defendant's chart A-29), but changed his mind. Although he was replaced as division head by a younger employee, he, unlike Shah, was allowed to continue working at the company. (Pl.'s Ex. B, 32-35, 129, 154.) Defendant replies that Plaintiff's claim that Soares was treated favorably because of his ethnicity contradicts Plaintiff's age-related claim that Soares was discriminated against when demoted and replaced by a younger employee. (Def.'s Reply at 10.) However, Plaintiff's arguments are not logically inconsistent or mutually exclusive – the evidence presented may lead a reasonable jury may find that an employer that improperly promotes younger people also makes hiring and firing decisions based on improper biases against certain ethnic groups, thereby deciding to demote older white employees while outright firing older non-white employees.

Furthermore, Plaintiff has established a prima facie case by showing various alleged comments by Ivers and Cignoli which raise an inference of discrimination based on national origin. Plaintiff has shown that Ivers and Cignoli made various comments about their not wanting foreign nationals to make presentations to clients, and Ivers made comments about not wanting Purcell to become the United Nations. Defendant argues that these comments are stray remarks that do not demonstrate bias against foreigners and that are excused by a legitimate business purpose of assuring that presenters are comprehensible to clients. Because these comments were remote in time from Plaintiff's termination and general in nature, they do not necessarily relate to Defendant's decision to terminate Plaintiff. However, the notion that clients may not warm to presentations made by foreign employees, a position that reaches beyond Plaintiff's national origin or his employment status, may reflect bias against foreigners. Ivers's and Cignoli's comments could therefore implicate Purcell's yielding to its clients' biases, and a jury might find then find that Defendant's actions were impermissibly motivated by discriminatory animus. Accordingly, a genuine issue of material fact remains as to Plaintiff's national origin discrimination claims under federal and state law, and Defendant's motion for summary judgment on Counts II-IV is denied.

## IV. CONCLUSION

Defendants have not eliminated the possibility that a reasonable jury could infer that age or national origin discrimination was a substantial motivating factor in terminating Plaintiff's employment. Defendant is therefore not entitled to summary judgment as a matter of law, and its motion for summary judgment [Doc. No. 84] is hereby **denied.**

SO ORDERED.

Dated at New Haven, Connecticut this  4th  day of June, 2007.

                                              /s/
                                    PETER C. DORSEY
                                    UNITED STATES DISTRICT JUDGE